```
         UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF NEW HAMPSHIRE
```

Stephen B. Monzione

    v.                                            Civil No. 12-cv-433-LM
                                                             Opinion No. 2013 DNH 012

U.S. Bank, N.A., as Trustee
for Mastr Asset Backed
Securities Trust 2006-FRE1

## O R D E R

In an action that was removed from the New Hampshire Superior Court, Stephen Monzione asserted two claims against his mortgage holder, one under the New Hampshire Consumer Protection Act ("CPA"), N.H. Rev. Stat. Ann. ("RSA") ch. 358-A, and one under the federal Truth in Lending Act ("TILA").  Before the court is defendant's motion to dismiss both claims.  Monzione objects, but only to the dismissal of his CPA claim.  Because that claim is subject to a statutory exclusion and is time barred, defendant's motion to dismiss is granted.

### The Legal Standard

Ruling on a motion to dismiss for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), requires the court to conduct a limited inquiry, focusing not on "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."

Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering such a motion, a trial court "accept[s] as true all well-pled facts in the complaint and draw[s] all reasonable inferences in favor of plaintiffs." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010)). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" González-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 247 (1st Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

**Background**

The relevant factual background, drawn from Monzione's complaint, is as follows. In September of 2005, Monzione applied for a $100,000 loan from Fremont Investment & Loan ("Fremont"), with repayment secured by a mortgage. When he applied for the loan, Monzione was: (1) unemployed; (2) receiving no regular income other than $815 per month in Social Security disability benefits; and (3) in possession of no tangible assets other than the real property he mortgaged. In addition, he had a credit score of 532, due to a credit history that included multiple defaults. Even so, his loan application

was approved, and he entered into a mortgage agreement with Fremont on September 30, 2005. Under the terms of that agreement, he was obligated to make monthly payments of: (1) $754.79 for the first twenty-four months of the repayment period; (2) $894.90 for the next six months; and (3) $927.22 for the final 330 months. During the first twenty-four months, Monzione's monthly payment equaled ninety-three percent of his monthly income.

In February of 2006, Monzione was notified that the servicing of his loan was being transferred from Fremont to American Servicing Company, as servicer for U.S. Bank, N.A. ("U.S. Bank"). Monzione defaulted on his loan, and in October of 2008, U.S. Bank notified him that it was instituting foreclosure proceedings.

While Monzione does not so allege in his complaint, he acknowledges, in his objection to U.S. Bank's motion to dismiss, that: (1) he filed for bankruptcy protection; and (2) on January 27, 2009, he brought an adversary proceeding against U.S. Bank in his bankruptcy case. The complaint in that proceeding is all but identical to the complaint Monzione filed in the New Hampshire Superior Court. See Def.'s Mot. to Dismiss, Ex. 1 (doc. no. 5-2). Both complaints assert that by making what Monzione calls a predatory loan, Fremont violated the New

3

Hampshire CPA and the TILA. Fremont's successor in interest, U.S. Bank, stands in Fremont's shoes vis-à-vis Monzione's claims. In the Bankruptcy Court, Judge Vaughn granted U.S. Bank's motion to dismiss Monzione's TILA claim,[1] but declined to dismiss his CPA claim.

### Discussion

Monzione concedes that U.S. Bank is entitled to dismissal of his TILA claim, which leaves only his CPA claim. U.S. Bank argues that it is entitled to dismissal of that claim because Fremont's extension of a loan to Monzione was an exempt transaction under both RSA 358-A:3, I, and RSA 358-A:3, IV-a. The court considers each argument in turn.

A. RSA 358-A:3, I

U.S. Bank first argues that as a mortgage banker, and as an entity subject to the jurisdiction of the federal Office of the Comptroller of the Currency, it is exempt from the CPA.[2] Monzione disagrees, arguing that: (1) it is too early to

---

[1] Specifically, Judge Vaughn ruled that Monzione had not made factual allegations sufficient to state a TILA claim and that the TILA claim was time-barred. See Def.'s Mot. to Dismiss, Ex. 2 (doc. no. 5-3), at 4-5.

[2] Given that Monzione's loan was made by Fremont, and that the basis for Monzione's claim is Fremont's conduct in making that loan, it is not at all clear how U.S. Bank's regulatory status has any bearing on the viability of Monzione's CPA claim.

4

determine whether his loan was an exempt transaction due to factual "ambiguities currently at issue surrounding [Fremont]'s status and identity, at times relevant to this complaint," Pl.'s Mem. of Law (doc. no. 7-1), at 6, along with changes in New Hampshire law "regarding lenders, servicers, originators and brokers in response to federal mandates following the subprime lending crisis," id.; and (2) neither the state or federal regulatory schemes that may apply to his loan purport to provide exclusive remedies or bar a mortgagor's recourse to the CPA.[3] While its argument is slightly off target, U.S. Bank is entitled to dismissal of Monzione's CPA claim.

New Hampshire's CPA includes several exemptions, including one for

> [t]rade or commerce that is subject to the jurisdiction of the bank commissioner, the director of securities regulation, the insurance commissioner, the public utilities commission, the financial institutions and insurance regulators of other states, or federal banking or securities regulators who possess the authority to regulate unfair or deceptive trade practices.

RSA 358-A:3, I.  "The burden of proving exemptions from the provisions of [the CPA] by reason of paragraph[ ] I . . . of

---

[3] The court notes that while the New Hampshire statute on which Monzione relies for that proposition, RSA 397-B:9, IV, is part of the scheme for regulating loan services, his claim does not arise from the servicing of a loan, but its origination.

this section shall be upon the person claiming the exemption." RSA 358-A:3, V.

Notwithstanding U.S. Bank's focus on its own regulatory status, and Monzione's focus on Fremont's status at the time he got his loan, the exemption on which U.S. Bank relies does not depend on the identity or status of the entity seeking its protection.  Rather, the dispositive question is whether Fremont, by entering into a loan agreement with Monzione, engaged in trade or commerce subject to the jurisdiction of one or more of the individuals or agencies enumerated in RSA 358-A:4, I.

"[T]o determine whether trade or commerce is 'subject to the jurisdiction of' a regulator, the court 'must examine the statutes that define the regulator's powers and authority.'" LeDoux v. JP Morgan Chase, N.A., No. 12-cv-260-JL, 2012 WL 5874314, at *6 (D.N.H. Nov. 20, 2012) (quoting Elmo v. Callahan, No. 10-cv-286-JL, 2012 WL 3669010, at *9 (D.N.H. Aug. 24, 2012); citing Rainville v. Lakes Region Water Co., 163 N.H. 271, 275 (2012)) (brackets omitted).  "If those statutes grant [an entity] the authority to supervise or regulate the trade or commerce in which the [defendant's] deceptive practice occurred, then that trade or commerce is 'subject to the jurisdiction of' [that entity], and the CPA does not apply." Elmo, 2012 WL

3669010, at *9 (citing <u>Rainville</u>, 163 N.H. at 275-76; <u>State v. Empire Auto. Grp., Inc.</u>, 163 N.H. 144, 146 (2011)).

When Fremont made its loan to Monzione, New Hampshire's banking code provided that "[t]he [banking] commissioner shall have general supervision of all banks (except national banks), trust companies, building and loan associations, credit unions, Morris plan banks, small loan companies, and other similar institutions in the state."  RSA 383:9, I.  The code further provided:

> The [banking] commissioner shall have exclusive authority and jurisdiction to investigate conduct that is or may be an unfair or deceptive act or practice under RSA 358-A and exempt under RSA 358-A:3, I . . . .  The commissioner may hold hearings relative to such conduct and may order restitution for a person or persons adversely affected by such conduct.

RSA 383:10-d.

Based on the factual allegations in Monzione's complaint, Fremont was under the general supervision of the New Hampshire banking commissioner when it loaned money to Monzione.  <u>See</u> RSA 383:9, I.  Moreover, Monzione's CPA claim does nothing other than allege unfair or deceptive acts under RSA chapter 358-A by a mortgage lender, which is conduct over which the banking commissioner had exclusive authority and jurisdiction.  <u>See</u> RSA

7

83:10-d.[4] Based on the foregoing, the court is compelled to conclude U.S. Bank is entitled to dismissal of Monzione's CPA claim because that claim is based upon a transaction exempted from the reach of the CPA by RSA 358-A:3, I. See Maroun v. N.Y. Mortg. Co. (In re Maroun), 427 B.R. 200, 204 (Bankr. D.N.H. 2010) (dismissing CPA claim against mortgage broker in reliance on RSA 358-A:3, I).[5] Finally, because the transaction in this case is exempt from the CPA because it was trade or commerce subject to the jurisdiction of the banking commissioner, it is not necessary to address U.S. Bank's argument that it is exempt from the CPA because it is subject to the jurisdiction of a federal banking regulator.

---

[4] The plain language of RSA 383:10-d refutes Monzione's argument that the legislature did not intend for the banking code to provide the exclusive remedy for claims such as the CPA claim in this case, and the fact that RSA 383:10-d authorizes the banking commissioner to order restitution refutes Monzione's argument that without a CPA claim, he would be without a remedy.

[5] After Fremont made its loan to Monzione, but before In re Maroun was decided, RSA chapter 397-A was amended to include a provision outlawing various forms of fraud. See RSA 397-A:2, VI. Thus, In re Maroun was decided under a slightly different statutory scheme than the one in place at the time of transaction in this case. See 427 B.R. at 204 (citing RSA 397-A:2, VI). Still, RSA 383:10-d alone provides a sufficient basis for determining that the transaction in this case is exempt from the CPA.

B. RSA 358-A:3, IV-a

U.S. Bank also argues that Monzione's CPA claim is time barred, by RSA 358-A:3, IV-a, because both the CPA claim in Monzione's bankruptcy case and the identical CPA claim in this case were brought more than three years after he entered into the loan agreement on which his claim is based. Monzione argues that the limitation period did not begin to run until U.S. Bank began foreclosure proceedings against him, which was the first time he reasonably could have determined that he had been injured by the repayment obligations imposed by his loan agreement with Fremont. While U.S. Bank's reliance on RSA 358-A:3, IV-a is misplaced, the court still concludes that Monzione's CPA claim is time barred.

The CPA expressly exempts from its coverage "[t]ransactions entered into more than 3 years prior to the time the plaintiff knew, or reasonably should have known, of the conduct alleged to be in violation of this chapter." RSA 358-A:3, IV-a. U.S. Bank treats that provision as if it were a three-year statute of limitations. It is not.

In a recent order, Judge Laplante addressed an argument similar to the one U.S. Bank makes here:

> Rather than requiring plaintiffs to bring suit within three years of the date they learn of the violation, section 358-A:3, IV-a exempts "[t]ransactions entered into more than 3 years prior to the time the plaintiff

9

knew, or reasonably should have known, of the conduct alleged to be in violation of this chapter" from the Consumer Protection Act. It does not govern the time period within which a plaintiff must bring suit. But see King v. Philip Morris, Inc., No. 99-C-856, 2000 WL 34016358, *12-13 (N.H. Sup. Ct. Nov. 2, 2000) (relying on legislative history to reach the opposite conclusion).

Forrester Envtl. Servs., Inc. v. Wheelabrator Techs., Inc., No. 10-cv-154-JL, 2011 WL 6300536, at *8 n.10 (D.N.H. Dec. 16, 2011). Judge Laplante continued: "Because the Consumer Protection Act contains no limitations provision applicable to this action, the court will apply section 508:4, I's general statute of limitations to plaintiffs' Consumer Protection Act claim." Forrester, 2011 WL 6300536, at *8 n.10. This court will follow Judge Laplante's lead.

New Hampshire's general statute of limitations provides, in pertinent part:

> Except as otherwise provided by law, all personal actions, except actions for slander or libel, may be brought only within 3 years of the act or omission complained of, except that when the injury and its causal relationship to the act or omission were not discovered and could not reasonably have been discovered at the time of the act or omission, the action shall be commenced within 3 years of the time the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the injury and its causal relationship to the act or omission complained of.

RSA 508:4, I.

10

Monzione defends against U.S. Bank's timeliness argument by invoking the discovery rule:

> Monzione could not have been aware of his victimization under the principles of predatory loan practices until he sustained actual damage from this practice (inherent in the elements of predatory lending is the inevitability that a mortgagor will fail to maintain his mortgage payments, resulting in the loss of his home through foreclosure and the ability of the mortgagee to protect its investment through the seizure and sale of the real property in question).  As plaintiff could not bring a predatory lending claim against the defendant until he became aware of the loss of his home, which occurred on or about October 31, 2008, his claim, brought on January 27, 2009, was well within the parameters set forth in the consumer protection act.

Pl.'s Mem. of Law (doc. no. 7-1), at 9-10.

Monzione's own argument explains why he is not entitled to the benefit of the discovery rule.  Monzione appears to argue that he was not injured by Fremont's conduct until U.S. Bank initiated foreclosure.  But, he also argues that foreclosure was inevitable from the moment he entered into the loan agreement.  Indeed, from that moment onward, he was obligated to make monthly payments that consumed more than ninety percent of monthly income.  In light of that factual allegation, it was not necessary for the other shoe to drop, in the form of foreclosure, to put Monzione on notice that he had been harmed.

As the New Hampshire Supreme Court has explained, in the context of a legal malpractice case:

11

> While the plaintiff may not have understood the full extent of the harm that would result from the loss of his potential third-party claim [due to the alleged negligence of his attorney], the discovery rule is not intended to toll the statute of limitations until the full extent of the plaintiff's injury has manifested itself. See Rowe v. John Deere, 130 N.H. 18, 23 (1987). Rather, that the plaintiff could reasonably discern that he suffered some harm caused by the defendant's conduct is sufficient to render the discovery rule inapplicable. See id.

Furbush v. McKittrick, 149 N.H. 426, 431 (2003) (parallel citation omitted). Cf. Patrick v. Morin, 115 N.H. 513, 515 (1975) (granting judgment for defendant in medical negligence action based on statute of limitations, and explaining that "[t]o delay the commencement of the running of the statute of limitations until plaintiff's ultimate degree of damage becomes known would allow suits to be brought long after the event, contrary to the intent and purpose of such statutes") (citing Dupuis v. Smith Props., Inc., 114 N.H. 625, 629 (1974)).

Given the factual allegations in Monzione's complaint, he cannot reasonably argue that he was unable to discern that he had been harmed as soon as he executed the loan agreement. He maintains that default and foreclosure were inevitable. The inevitability of those events, in turn, arises from facts that were at least as well known to Monzione as they were to Fremont, i.e., the amount of his loan, the amount of the monthly payments to which he agreed, and the amount of income and assets upon

which he could draw to repay the loan. Because, by Monzione's own reckoning, foreclosure was the inevitable result of his loan from Fremont, and that inevitably was clearly foretold by facts known to him at the time he took the loan, Monzione was obligated to bring his CPA claim within three years of the date on which he entered into the transaction at issue, i.e., no later than October 1, 2008. Even under the most generous view of the facts alleged in his complaint, he did not do so. Thus, his claim is time barred, which provides a second justification for its dismissal.

### Conclusion

Because Monzione's CPA claim arises from a transaction that is exempted from that statute, and because that claim is untimely, U.S. Bank's motion to dismiss, document no. 5, is granted. Accordingly, the clerk of the court shall close this case.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

January 25, 2013

cc: Paul M. Monzione, Esq.
    Christopher J. Somma, Esq.